**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ALEXIS GUZMAN-OLEA,

Defendant - Appellant.

No. 26-3105
(D.C. No. 2:26-CR-20027-HLT-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **MATHESON** and **CARSON**, Circuit Judges.
_____

The government charged Alexis Guzman-Olea with reentry of a previously

removed alien, in violation of 8 U.S.C. § 1326(a), and moved for him to be detained.

A magistrate judge ordered Guzman-Olea released with conditions, but the district

court revoked the release order and instead directed he be detained pending trial.

Guzman-Olea now appeals the district court's detention decision.  Exercising

jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3145(c), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

### I.    Legal Background

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).  The Bail Reform Act sets out the framework for evaluating whether pretrial detention is appropriate.  *See* 18 U.S.C. § 3142.

Under 18 U.S.C. § 3142(f)(2), the government may move for a detention hearing when the case involves "a serious risk that [the defendant] will flee," § 3142(f)(2)(A), or "a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror," § 3142(f)(2)(B).

Once the court has held a hearing, a person can be detained pending trial only if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," § 3142(e)(1).  In determining whether conditions may be imposed under § 3142(e)(1), the judicial officer must consider four factors: "(1) the nature and circumstances of the offense charged"; "(2) the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  § 3142(g).

II.    **Factual Background and Proceedings**

Guzman-Olea, a 22-year-old native and citizen of Mexico, has lived in the area of Lawrence, Kansas, for four years.  He and his girlfriend have a two-year-old daughter.  Both his girlfriend and his daughter are United States citizens.

Guzman-Olea has had numerous interactions with authorities in the last three years.  He first was arrested in July 2023 in Douglas County, Kansas, for driving under the influence, without a valid license, and without insurance, and he was placed in a diversion program.  In 2024, he had five encounters with immigration authorities, all outside Kansas.  He was arrested in Chula Vista, California, and voluntarily returned to Mexico on three separate occasions in March and April 2024 (around the time of his daughter's birth).  In July 2024, he was arrested in Arizona, issued an expedited removal order, and removed.  Then, in August 2024, he was again arrested in Arizona, and he was again removed.

In November 2024, Guzman-Olea was stopped in Butler County, Kansas, and cited for speeding, driving with a cancelled license, and failing to wear a seatbelt.  In January 2025, he failed to appear for a hearing on those charges, and the court issued a bench warrant.  In August 2025, he was arrested in Lawrence, Kansas, for driving under the influence, driving without a license, and having an open container.  After being served with the bench warrant from the Butler County charges, he posted bond and was released.  Then in September 2025, he was arrested in Lawence on an outstanding bench warrant.  He was released the next day.  In November 2025, he

3

again failed to appear for a hearing on the Butler County charges, and the court again issued a bench warrant.

In March 2026, Guzman-Olea was stopped for a defective tail lamp and arrested for driving without a license. The jail alerted Immigration and Customs Enforcement (ICE), which took him into custody. Shortly after, he was indicted on one count of violating § 1326(a). (Because he was in custody on that charge, he missed a May 2026 court appearance on the August 2025 Lawrence charges.)

The government moved for a pretrial detention hearing under both § 3142(f)(2)(A) and (B). The magistrate judge granted a hearing under § 3142(f)(2)(A). At the end of the hearing, however, she found that the government had not shown either that Guzman-Olea was a serious flight risk or that no condition or combination of conditions could reasonably assure his appearance as required. She ordered he be released subject to conditions, including restricting his travel, prohibiting his use of alcohol, and requiring he use location-monitoring technology. But she granted the government's motion to stay her ruling so the government could seek review in the district court.

The government moved the district court to revoke the release order. It argued that "Mr. Guzman-Olea should be detained pending trial because he poses a risk of not appearing at future hearings, because he is a danger to the community, and because his past actions demonstrate a complete disregard of conditions imposed on him by other authorities." Aplt. App. at 27. Guzman-Olea argued the government had never shown it was entitled to a detention hearing under § 3142(f)(2). He further

4

argued that the government could not sustain its burden of showing by a preponderance of the evidence that he presented a serious risk of flight, as required by § 3142(f)(2)(A).

The district court held a hearing on the government's motion to revoke. The court outlined Guzman-Olea's history of arrests and nonappearances, but the defense objected that the government had not shown the failures to appear were intentional: "The risk of nonappearance and a risk of flight are different. And a serious risk of flight is more narrow – and a greater burden than – than that." Aplt. App. at 110. The defense suggested that "the Bail Reform Act specifically contemplates what to do if someone poses a risk of nonappearance, and that is release[] on conditions." *Id.*

Reviewing "ties to the jurisdiction, incentives to flee, ability to flee, and reliability and trustworthiness of the defendant," *id.* at 114, the district court found that the government had satisfied its burden under § 3142(f)(2)(A) to show that Guzman-Olea presented a serious flight risk. Moving on to potential conditions of release, the district court evaluated the factors set forth in § 3142(g). It found that "the government has proven by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant will appear as required." Aplt. App. at 125. The court continued:

> As already detailed, the defendant has an established pattern of failing to appear. He has failed to appear three times in the past 18 months. And that doesn't include the May 5th one, which I recognize he was in custody for. And the stakes in this case are even higher.
>
> I am mindful that the Court is required to impose the least restrictive conditions necessary to reasonably assure that both the defendant will

5

appear at later proceedings in this case and the safety of others. I have considered the conditions outlined in the bond report and in the release order.

Overarchingly, I do not find the defendant to be a reliable or trustworthy person. Therefore, I have no confidence he would honor a travel restriction. He has already demonstrated an ability to move across borders without detection and without following restrictions or laws.

Location monitoring is not foolproof and can be cut. Particularly for an individual who has demonstrated an ability to move across borders from Kansas to Arizona to Colorado, and who has not appeared in court on three occasions since January of 2025.

Again, important in all of this is the Court's confidence that the defendant would honor or comply with restrictions. The Court has absolutely no confidence that this defendant would comply with any condition.

In the three years he has been here, he has ignored international borders, immigration laws, immigration orders, court orders to appear, and other agreements. He has been arrested nine times. He has three pending cases. He has a motion to revoke in one case and has missed three court hearings.

He has been voluntarily returned three times and returned twice. He has demonstrated a disrespect for authority, so I have no confidence he would comply with any condition this Court put in place.

*Id.* at 125-26. The district court therefore granted the government's motion to revoke the release order and ordered Guzman-Olea held pending trial.

## DISCUSSION

Guzman-Olea argues that (1) the government failed to establish a serious risk of flight under § 3142(f)(2)(A), and (2) the district court erred in ordering detention based on its own lack of confidence about his ability to comply with conditions, rather than based on whether conditions could reasonably assure his appearance as required by § 3142(e)(1).

6

I.      **Serious Risk of Flight**

"The government bears the burden of proving a defendant is a flight risk by a preponderance of the evidence."  *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017).  "We apply de novo review to mixed questions of law and fact concerning the detention . . . decision, but we accept the district court's findings of historical fact which support that decision unless they are clearly erroneous."  *Id.* (internal quotation marks omitted).

Guzman-Olea argues that the record does not support the flight determination, asserting that § 3142(f)(2)(A) requires more than a risk of nonappearance generally. He does not take issue with the factors the district court examined, but instead challenges the court's conclusions.  While conceding that "failures to appear may inform the inquiry," he asserts such failures are relevant "only when the record supports the inference that they reflect intentional conduct."  Aplt. Br. at 9.  He further asserts that the district court's "tally of 'nine arrests since 2023 and three failures to appear,'" which was the "foundation" of its ruling, "was overstated."  *Id.* He explains that "five of the nine 'arrests' were immigration encounters at the border," there was no certainty that Guzman-Olea missed an appearance in August 2025, and the government's evidence that certain mailings were returned as undeliverable indicates that "the missed appearances are at least as consistent with lack of notice as with volitional flight."  *Id.* at 9-10.

We see no cause to discount the five arrests by immigration authorities, as Guzman-Olea urges.  His multiple immigration encounters demonstrate a disregard

7

for immigration laws and orders, as well as demonstrated ability to travel interstate and to cross the international border.  But even were we to consider only the encounters with law enforcement in Kansas, on multiple occasions Guzman-Olea failed to appear as required and remained at large.  Regarding his suggestion about lack of notice, there is nothing to indicate he did not have notice to appear on all occasions, for example the January 2025 hearing on the Butler County charges.

Guzman-Olea continues, "[b]eyond the missed appearances, most of what the district court relied on is inherent to virtually every § 1326 case." Aplt. Br. at 10.  To be sure, we have held noncitizens facing charges under § 1326 are not categorically ineligible for pretrial release.  *See Alion-Alion*, 875 F.3d at 1335.  The fact that certain factors are common to § 1326 cases, however, does not mean they cannot support a detention decision in the context of a particular case.

Guzman-Olea also states "[t]he district court . . . made no mention of what the magistrate [judge] had credited on the other side of the reliability ledger: a three-year work history, stable family ties, and demonstrated abstinence from alcohol." Aplt. Br. at 10.  But he misplaces his reliance on *United States v. Ramirez-Lopez*, No. 25-3109, 2025 WL 2319430, at *5 (10th Cir. Aug. 12, 2025) (unpublished), in which the district court's detention decision was supported only by a checkbox form without any detail.  Here, the court did not ignore evidence in his favor.  The district court and the parties discussed his work history during the hearing, but the court noted that Guzman-Olea could not work in the United States legally, which conflicted with the release requirement that he not violate any federal law.  The court

8

also explicitly recognized his family ties and his work history at the outset of its oral ruling.

This is a close case, but exercising de novo review of the record as a whole, we conclude the government met the preponderance-of-the-evidence standard.

## II.     Conditions to Reasonably Assure Appearance As Required

Guzman-Olea argues the district court substituted its own standard for the "reasonably assure" standard set forth in § 3142(g) when it stated it had no confidence that he would comply with any conditions.  He also asserts that the district court did not adequately address several of the conditions the magistrate judge imposed, including supervision and reporting, a curfew, and the prohibition on consuming alcohol.

We disagree the district court substituted its own standard.  The district court applied the statutory standard, expressly finding that no condition or combination of conditions would reasonably assure Guzman-Olea's appearance as required.  In stating it had no confidence Guzman-Olea would comply with conditions, the district court simply was describing that standard using different words.  Unlike in *United States v. Campas*, No. 24-4003, 2024 WL 687716, at *3 (10th Cir. Feb. 20, 2024) (unpublished), which Guzman-Olea cites, there is no indication that the district court was applying any higher standard.

We also disagree that the district court improperly failed to address all of the conditions imposed by the magistrate judge.  Although he asserts the district court failed to address supervision and reporting, for example, the court noted that

9

Guzman-Olea could evade location monitoring. In any event, the district court stated it had considered all of the conditions, and we generally take the court at its word, *see Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1258 (10th Cir. 2022). And the district court's overall reasoning—that it had no confidence Guzman-Olea would comply with *any* conditions—applies to all of the conditions the magistrate judge imposed.

## CONCLUSION

We affirm the district court's detention order.

Entered for the Court

Per Curiam